kk/ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ADVISORS EXCEL, LLC,                         )
                                             )
          Plaintiff,                         )
                                             )
                                             )
                                             )         **Case No. 11-4015-JAR**
v.                                           )
                                             )
SENIOR ADVISORY GROUP, LLC,                  )
                                             )
          Defendant.                         )
                                             )
_____)

## MEMORANDUM AND ORDER

Plaintiff Advisors Excel, LLC ("Advisors Excel") brings this action against Senior

Advisory Group, LLC, ("Senior Advisory Group") alleging claims for trademark infringement in

violation of 15 U.S.C. § 1114, unfair competition and dilution in violation of the Lanham Act, 15

U.S.C. § 1125, violation of several states' deceptive trade practices acts, as well as a common

law claim for unfair competition and for tortious interference with contract.

Pending before the Court is defendant Senior Advisory Group's Motion to Dismiss for

Lack of Personal Jurisdiction (Doc. 9). The motion is fully briefed and the Court is prepared to

rule. For the reasons stated in detail below, defendant's motion to dismiss is denied.

## I.      Rule 12(b)(2) Standards

Plaintiff has the burden of establishing personal jurisdiction over defendant.[1]  In the

absence of an evidentiary hearing, plaintiff must make only a prima facie showing of jurisdiction

---

[1]*Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

to defeat a motion to dismiss.[2]  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[3]  Allegations in a complaint are accepted as true if they are plausible, non-conclusory, and non-speculative, to the extent that they are not controverted by submitted affidavits.[4]  When a defendant has produced evidence to support a challenge to personal jurisdiction, a plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint.[5]  The court resolves all factual disputes in favor of the plaintiff.[6]  Conflicting affidavits are also resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[7]  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[8]

## II.     Factual Background

Drawing all reasonable inferences in favor of plaintiff, the following facts are taken from the Complaint and attached exhibits.  The Court does not consider any general or conclusory

---

[2]*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[3]*OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[4]*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989); *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984) *cert. denied*, 471 U.S. 1010 (1985).

[5]*Pytlik*, 887 F.2d at 1376.

[6]*Dudnikov*, 514 F.3d 1070.

[7]*Behagen*, 744 F.2d at 733.

[8]*OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

allegations unsupported by affidavit or other evidence.

Plaintiff Advisors Excel is a Kansas limited liability company with its principal place of business in Topeka, Kansas.  Plaintiff is an independent field marketing organization that serves professional advisors in the insurance and annuity markets.  Plaintiff owns several federally-registered trademarks, including the "AE Mark" at issue in this case.  The AE Mark consists of the stylized wording "ADVISORS EXCEL" to the right of a square design that contains a triangular design.  Plaintiff has invested substantial amounts of time, effort, and money to promote goods featuring the AE Mark, as well as the AE Mark itself.

Defendant is an Arizona corporation with its principal place of business in Scottsdale, Arizona.  Defendant is a wholesaler of annuity and life insurance products serving approximately 568 independent financial advisors throughout the United States, including three advisors in Kansas.  Defendant maintains a website that provides access to educational and training material for all users with Internet access.  The website contains hyperlinks which provide access to other websites. Defendant's website allows interested users to provide their contact information to receive educational and training material.  Defendant has also posted various "YouTube" videos on www.youtube.com—the subject of the pending action.  The "You Tube" videos were meant to be educational tools for defendant's advisors.  The large majority of the actual views of the "You Tube" videos are from hyperlinks from defendant's website and/or email links.

Plaintiff alleges that defendant Senior Advisory Group used the AE Mark in its promotional materials, including on its website and YouTube channel.  Plaintiff also alleges that defendant's use of the AE Mark has led to confusion with plaintiff's products and services, wrongfully treads on plaintiff's goodwill, and has caused grave injury to plaintiff's trade name,

3

trademark rights, and reputation in the advisor market.  On October 8, 2010, plaintiff sent a demand letter to defendant, accusing defendant of using plaintiff's trademarks and demanding that defendant immediately cease and desist the use of those trademarks.  Defendant responded with a letter on October 13, 2010, stating that there were not any references to the AE Mark in its marketing materials, nor would there be any in the future.  Plaintiff alleges that, despite these assurances, defendant continued to infringe plaintiff's trademark.

Defendant has never directly solicited to potential advisors in Kansas; the three advisors it serves in Kansas, who were referred to defendant by outside parties, account for only 0.52 percent of defendant's total independent advisors and only 0.30 percent of defendant's total revenue.   Of these three advisors in Kansas, two are actually registered with Independent Financial Group, LLC, a broker dealer doing business out of San Diego, California. The remaining active advisor in Kansas is registered with Brokers International Financial Services, LLC, a broker dealer doing business out of Panora, Iowa.  Defendant never directly solicited business from these three independent advisors; rather, these three advisors contacted defendant based on referrals.

Defendant has never had, and does not currently have, shareholders, employees, or property in or from Kansas.  Defendant has never had, and does not currently have, bank accounts in Kansas.  Defendant has never had, and does not currently have, a phone or fax number in Kansas.  Defendant has never solicited, and does not currently solicit, business from Kansas residents.  Defendant has traveled to Kansas on only one occasion.  On February 2, 2006, Defendant representatives attended a reception in Kansas City, Kansas for a new product launch hosted by Aviva Life and Annuity Company ("Aviva").

## IV.    Discussion

The jurisdictional facts alleged in the Complaint are as follows: "Defendant transacts business in Kansas and, therefore, is subject to the jurisdiction of this Court.  The effects of defendant's tortious conduct have also occurred primarily in Kansas."[9]  Defendant argues that the Court lacks personal jurisdiction because defendant does not have substantial contacts with the state of Kansas and does not direct advertising or Internet activities toward Kansas, based on its attached affidavits.  Defendant asks the Court to either dismiss the case, or alternatively to transfer the case to the United States District Court for the District of Arizona.

"In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules."[10]  To establish personal jurisdiction over a defendant, plaintiff must show that jurisdiction is proper under the laws of the forum state, Kansas, and that the exercise of jurisdiction would not offend due process.[11]  The Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, therefore the Court proceeds directly to the constitutional analysis.[12]

For the court's exercise of jurisdiction to comport with due process, defendant must have "minimum contacts" with the State of Kansas, "such that having to defend a lawsuit there would

---

[9]Doc. 1 ¶ 4.

[10]*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)).  The federal Copyright Act, 17 U.S.C. § 101 *et seq.*, does not provide for nationwide service of process, therefore the court applies the law of the state in which it sits.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

[11]*Intercon, Inc., v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

[12]*Fed. Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)).

not 'offend traditional notions of fair play and substantial justice.'"[13]  "Minimum contacts" can

be established in one of two ways, either generally or specifically for lawsuits based on the

forum-related activities:

> General jurisdiction is based on an out-of-state defendant's
> "continuous and systematic" contacts with the forum state, and
> does not require that the claim be related to those contacts.
> Specific jurisdiction, on the other hand, is premised on something
> of a quid pro quo: in exchange for "benefitting" from some
> purposive conduct directed at the forum state, a party is deemed to
> consent to the exercise of jurisdiction for claims related to those
> contacts.[14]

Plaintiff argues this Court has both general and specific jurisdiction over defendant; thus the

Court addresses each in turn.

**A.    *Minimum Contacts***

**1.    General Jurisdiction**

General jurisdiction exists over a nonresident defendant whose contacts with the state are

"continuous and systematic."[15]  "In order for general jurisdiction to lie, a foreign corporation

must have a substantial amount of contacts with the forum state."[16]   In determining whether a

defendant corporation has substantial contacts with the forum state, the court considers four

factors:

> (1) whether the corporation solicits business in the state through
> local office or agents; (2) whether the corporation sends agents
> into the state on a regular basis to solicit business; (3) the extent to

---

[13]*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[14]*Id*. at 1078.

[15]*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

[16]*Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

which the corporation holds itself out as doing business in the
forum state, through advertisements, listings or bank accounts; and
(4) the volume of business conducted in the state by the
corporation.[17]

Defendant first argues that it does not solicit business in Kansas through a local office or

agent, and supports this assertion with an affidavit stating that its only office is located in

Arizona.[18]  Similarly, defendant argues that it does not send agents into Kansas on a regular basis

to solicit business.  Defendant also supports this assertion with an affidavit stating its

representatives have only traveled to Kansas one time.[19]  Plaintiff has not contradicted or

produced affidavits that directly address these points, therefore the first two factors weigh in

favor of defendant.

Regarding the third *Trierweiler* factor, defendant argues that it does not hold itself out as

doing business in Kansas, stating in an affidavit that it has never had, and does not currently

have, property, employees, shareholders, bank accounts, or phone numbers in Kansas.[20]

Plaintiff, on the other hand, contends that defendant holds itself out as doing business in Kansas

through its Internet website.

The parties focus their discussion on a sliding-scale approach used by some courts in

deciding whether a defendant's website activities support the exercise of personal jurisdiction.[21]

The sliding scale approach requires the Court to consider the website's level of interactivity in

---

[17]*Id.*

[18]Doc. 10-5 at 2.

[19]*Id.* at 3.

[20]*Id.*

[21]*See Rainy Day Books, Inc. v. Rainy Day Books & Café, LLC.* 186 F. Supp. 2d 1158, 1163 (D. Kan. 2002) (citing *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296–97 (10th Cir.1999)).

determining whether personal jurisdiction lies.[22]   But the Court applies the most recent Tenth

Circuit guidance in determining whether defendant's Internet activity is sufficient to establish

minimum contacts.  In *Shrader v. Biddinger*,[23] the court explained that the appropriate analysis

focuses on whether the Internet user or the website "intentionally directed activity or operation at

the forum state rather than just having the activity or operation accessible there."[24]   It explained

that a website may subject the operator to general jurisdiction "only when the defendant has

actually and deliberately used its website to conduct commercial transactions *on a sustained

basis with a substantial number of residents* of the forum."[25]   The court explicitly declined to

take "a definitive position on the *Zippo* sliding-scale test, though we mentioned it in *Soma*, 196

F.3d at 1296–97.  Nor do we take such a position here in merely considering the passive

character of the Wave59 forum as germane to our jurisdictional analysis."[26]

Plaintiff argues that the commercial nature of defendant's website is evidence that it

conducts business in Kansas.[27]   To support this argument, plaintiff submits screenshots of

defendant's website purporting to show that, among other things, the website provides a

contracting mechanism for obtaining instant approval of "E&O" insurance policies.[28]   Defendant

responds that the "E&O" page in question is actually a website belonging to another company, to

---

[22]*Soma Medical*, 196 F.3d at 1296 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123–24 (W.D. Pa.1997)).

[23]633 F.3d 1235 (10th Cir. 2011).

[24]*Id.* at 1240.

[25]*Id.* at 1243 (quotation omitted) (emphasis in original).

[26]*Id.* at 1242 n.5.

[27]*See Rainy Day Books*, 186 F. Supp. 2d at 1164.

[28]*See* Doc. 12-5 at 1.

which defendant merely provides a link.  Defendant's assertions are supported both by the URL

listed at the bottom of plaintiff's exhibit itself[29] and by defendant's affidavit.[30]  Defendant further

has established that defendant Senior Advisory Group receives no monetary benefit from this

link to a third-party website.

    Plaintiff argues that defendant's website offers training videos, downloads of e-books,

and webinars, which is indicative of commercial activity.  But plaintiff does not explain how

these website features constitute commercial activity sufficient to subject defendant to general

jurisdiction.  These materials are free to visitors to defendant's website.  The Tenth Circuit has

explained:

> It should be emphasized that, as we are dealing with general
> jurisdiction, the commercial contacts here must be of a sort "that
> approximate physical presence" in the state—and "engaging in
> commerce with residents of the forum state is not in and of itself
> the kind of activity that approximates physical presence within the
> state's borders."  Nevertheless, most courts would agree that
> operating a web site selling products to residents of a state *can*
> subject the seller to general jurisdiction in that state, depending on
> the nature and degree of commercial activity with the forum
> state.[31]

Plaintiff is unable to make a prima facie showing that defendant's website sells products to

residents in Kansas, much less on a sustained basis to a substantial number of residents in the

forum.  Nor has plaintiff shown that defendant's operation of a website approximates physical

presence in the state.  Therefore, the third *Trierweiler* factor weighs in favor of defendant.

---

[29]*Id.*

[30]*See* Doc. 13-7.

[31]*Shrader*, 633 F.3d at 1243 (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).

Regarding the fourth *Trierweiler* factor, plaintiff contends that defendant's ongoing business relationship with its Kansas clients, and the revenue defendant derives from its relationship with the Topeka, Kansas office of Aviva, meets the substantial contacts threshold. Plaintiff supports its assertion with an affidavit stating that defendant derives the majority of its revenue through its relationship with Aviva's Topeka, Kansas office.[32]

Defendant argues that the small percentage of its client base and overall business revenue stemming from Kansas does not meet the threshold for general jurisdiction. Defendant supports this assertion with an affidavit stating that its Kansas advisors are only 0.52% of its total number of independent advisors and account for only 0.30% of defendant's total revenue.[33] This Court has held that such small percentages of business contacts do not satisfy the substantial contacts threshold for general jurisdiction.[34] Defendant also disputes plaintiff's account of defendant's relationship with Aviva, stating in its brief and accompanying affidavit that all business with Aviva is conducted through Aviva's offices in Iowa.

The nature and extent of defendant's relationship with Aviva is in dispute and is the subject of conflicting affidavits. Plaintiff submits the affidavit of its founder, Derek Thompson, who attests that he has "personal knowledge of the matters herein" and that:

> [Defendant] does business with [Aviva's] Topeka, Kansas location through its affiliation with Annexus Group, Senior Advisory Group, LLC. [sic] derives millions of dollars in revenue through its relationship with [Aviva]. Based upon information and belief, the majority of defendant's revenue is generated from this

---

[32]Doc. 12-1 at 1.

[33]Doc. 10-5 at 2–3.

[34]*See Capitol Fed. Sav. Bank v. E. Bank Corp.*, 493 F. Supp. 2d 1150, 1165 (D. Kan. 2007) (holding that Kansas residents comprising 0.008% of Massachusetts bank's customers were not 'substantial').

relationship.[35]

Defendant submitted the affidavit of its President, Steve Stern, along with supporting documentation.  Stern's affidavit states that Aviva is an Iowa corporation with its principal executive office located in West Des Moines, Iowa and that defendant does not do business with Aviva through its Kansas office, but through its Iowa office.  Defendant contends that its relationship with Aviva stems from its participation with the Annexus Group, which is defined by a Distributor Agreement that is governed by Arizona law.  Defendant has further submitted the contract between itself and Aviva, which states that it is governed by Iowa law.

Conflicting affidavits are generally resolved in favor of plaintiff.  In this case, however, defendant argues that the Court should disregard Thompson's affidavit as misleading and fraudulent, suggesting in a footnote that plaintiff's failure to correct the factual misstatement would be sanctionable.  While the Court declines to address defendant's suggestion that sanctions might be appropriate in the absence of a motion for sanctions, the Court does not find any support in Thompson's affidavit that his statement about defendant's relationship with Aviva is based on personal knowledge.[36]  Thompson fails to establish the basis for his knowledge that defendant does business with Aviva's Topeka office and that it derives millions from that specific link to Kansas.  Thompson's role as plaintiff's founder does not, in and of itself, establish his personal knowledge about defendant's business relationship with Aviva.  Stern,

---

[35]Doc. 12-1.

[36]The Court rejects plaintiff's argument that this evidence constitutes a new argument that is impermissible in the reply.  While plaintiff is correct that the Court should not consider an entirely new argument that is raised for the first time in a reply brief, this evidence is submitted in response to the argument asserted by plaintiff in the response, that defendant's relationship with Aviva's Kansas office is substantial.  Under these circumstances, defendant's argument is not new, but rebuttal evidence, and is entirely acceptable in the reply.

however, has direct access to the operative facts surrounding the Aviva link and defendant has submitted further proof of his statements in the Distributer Agreement with Annexus Group, Aviva's Articles of Incorporation, and the Independent Producer Contract.  Stern's affidavit, which is based on personal knowledge, rebuts plaintiff's conclusory allegation that defendant has substantial contacts in Kansas and is sufficient to controvert plaintiff's factual averments on this point.[37]

Moreover, plaintiff's relationship with three financial advisors in Kansas, and a single visit to Kansas, are insufficient to establish general jurisdiction.  "Simply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there. . . .  Likewise, sporadic or isolated visits to the forum state will not subject the defendant to general jurisdiction."[38]  Of the three financial advisors defendant worked with, two are actually registered with a broker dealer doing business out of California. The remaining active advisor in Kansas is registered with a broker dealer doing business out of Panora, Iowa.   It is uncontroverted that defendant never directly solicited business from these three independent advisors; rather, these three advisors contacted defendant based on referrals.  Moreover, defendant's February 2, 2006, visit to Kansas for a reception in Kansas City, Kansas for Aviva's product launch constitutes an isolated visit that does not give rise to "continuous and systematic" contacts with Kansas.

Weighing the four *Trierweiler* factors, the Court finds that plaintiff has not met its burden

---

[37] *See Shrader*, 633 F.3d at 1248 (explaining that plaintiff must submit "plausible, non-conclusory, and non-speculative" facts, which will not be accepted as true once controverted by an affidavit that is based on personal knowledge).

[38] *Id.* at 1246–47 (citations omitted).

of establishing a prima face case that defendant has continuous and systematic contacts with Kansas that justify the exercise of general personal jurisdiction.  The Court proceeds to consider whether specific personal jurisdiction is present in this case.

### 2.      Specific Jurisdiction

Specific jurisdiction exists over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[39]  In evaluating whether conduct was "purposefully directed," the Tenth Circuit has explained:

> In the tort context, we often ask whether the nonresident defendant "purposefully directed" its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant "purposefully availed" itself of the privilege of conducting activities or consummating a transaction in the forum state. . . . In all events, the shared aim of "purposeful direction" doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state.[40]

Plaintiff argues this Court has specific jurisdiction over defendant because it committed tortious acts directed at Kansas.  Plaintiff argues that defendant conducted business in Kansas through its website that directly related to the infringing materials, and that defendant was on notice that it was infringing a trademark held by plaintiff in Kansas, and knew that any economic harm caused by trademark infringement would be felt in Kansas.  Defendant contends plaintiff

---

[39]*OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[40]*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008).

has not demonstrated that it (1) purposely directed its activities at plaintiff in Kansas nor (2) that

plaintiff's claims arose out of defendant's attenuated contacts with Kansas.

      **a.**      **Purposeful Direction**

To satisfy the "purposeful direction" requirement, plaintiff first cites several cases

holding that personal jurisdiction may be granted under the Kansas long-arm statute when the

effects of a tortious act by a foreign defendant are felt by the plaintiff in Kansas.  As previously

noted, however, the Kansas long-arm statute is broadly interpreted to allow personal jurisdiction

to the full extent allowed by due process.[41]

The Tenth Circuit applies an "effects test," allowing the exercise of jurisdiction when

there is a prima facie showing that defendant (1) intentionally acted (2) in a manner expressly

aimed at Kansas with (3) knowledge that the brunt of the injury would be felt in Kansas.[42]  In the

Tenth Circuit, "[t]he mere allegation that an out-of-state defendant has . . . committed business

torts that have allegedly injured a forum resident does not necessarily establish that the

defendant possesses the constitutionally required minimum contacts."[43]  The Court evaluates

both the quantity and quality of defendant's contacts with the State of Kansas.[44]  In the Internet

context, the Court places emphasis on whether the website intentionally directs Internet content

---

[41]*See Fed. Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing *Volt Delta Res., Inc. v. Devine*, 241 Kan. 775, 740 P.2d 1089, 1092 (1987)).

[42]*Dudnikov*, 514 F.3d at 1072 (analyzing *Calder v. Jones*, 465 U.S. 783 (1984)).

[43]*Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995).

[44]*Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 n.5 (10th Cir. 2005); *OMI Holdings*, 149 F.3d at 1092.

or operations at the forum state.[45]

The Tenth Circuit, as well as other courts, require a plaintiff to present "something more" than the injuries a plaintiff allegedly suffered in order to show that a defendant aimed or targeted its conduct at the forum state.[46]  Maintenance of a website alone is not sufficient to subject the owner or operator to personal jurisdiction, "simply because it can be accessed by residents of the forum state."[47]  Moreover, "posting allegedly defamatory comments or information on an Internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read."[48]  Instead, the Court must look for indications that "a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state."[49]

Defendant contends there is no evidence it expressly aimed its conduct at Kansas because its website is not sufficiently interactive.  The Court agrees that defendant's website alone does not establish that defendant expressly aimed its conduct at Kansas.  As already explained under the Court's discussion of general jurisdiction, there is nothing particular about the operation or content of defendant's website that shows a connection with Kansas.  Defendant does not sell any products on its website, it only provides hyperlinks which provide access to other websites.

---

[45]*Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011).

[46]*See, e.g., Dudnikov*, 514 F.3d at 1077; *Allison v. Wise*, 621 F. Supp. 2d 1114, 1120 (D. Colo. 2007); *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1011, 1021 (D. Kan. 2006) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)); *Gage, Inc. v. BioConversion Tech., LLC*, No. 2:08-CV-57 DB, 2009 WL 3181940, at *10 (D. Utah Sept. 30, 2009); *Toytrackerz LLC v. Koehler*, No. 08-2297-GLR, 2009 WL 1505705, at *13, *16 (D. Kan. May 28, 2009).

[47]*Shrader*, 633 F.3d at 1241.

[48]*Id.*

[49]*Id.*

Defendant's website also allows interested users to provide their contact information to receive educational and training material.  Merely posting the allegedly infringing trademark on defendant's website does not, alone, subject defendant to personal jurisdiction wherever the information may be accessed.[50]

While there is some overlap between the two elements, "expressly aiming" conduct is not the same as an awareness of its foreseeable consequences.  "[T]he 'express aiming' test focuses more on a defendant's intentions—where was the 'focal point' of its purposive efforts—while the latter requirement concentrates on the consequences of the defendant's actions—where was the alleged harm actually felt by the plaintiff."[51]  To "expressly aim" conduct, the forum state must be the "focal point of the tort."[52]  To establish a prima facie case of specific jurisdiction, plaintiff must show that Kansas was the focal point of the website and YouTube postings that utilized the AE Mark.  Plaintiff has failed to make this showing, instead relying entirely on the awareness of foreseeable consequences; in this case, the fact that plaintiff resided in Kansas.  There is no evidence that defendant's website is not geographically neutral, either in terms of operation or content.  Moreover, there is no indication that defendant's website and linked YouTube postings were targeted at Kansas.

Plaintiff also argues that the "something more" in this case is based on defendant's continued infringement on its trademark after receiving notice that plaintiff and its customers were located in Kansas and despite promising to cease the infringement.  Plaintiff maintains that

---

[50]*Id.* at 1244.

[51]*Dudnikov*, 514 F.3d at 1075.

[52]*Id.* at 1074 n.9 (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995)).

defendant (1) knew that plaintiff owned the AE Mark, (2) knew that plaintiff's principal place of business was in Kansas, and (3) had been put on notice of prior infringement of the AE Mark by plaintiff's demand letter.  Plaintiff argues that this case is similar to *Toytrackerz*,[53] where the defendant continued to commit tortious conduct through its website after being notified by plaintiff of the infringement, which constituted the "something more" necessary to find specific jurisdiction.[54]

The Court agrees that defendant's actions after receiving the demand letter constitute evidence of purposeful activities directed at Kansas.  Defendant was put on notice of its infringing activity when plaintiff sent its first demand letter on October 8, 2010.  Defendant acknowledged plaintiff's demands in its reply letter, where it affirmed that no infringing content remained on defendant's website and no further infringement would occur in the future.  Per a screenshot of defendant's YouTube page taken on February 4, 2011,[55] however, plaintiff shows either a new or continuing alleged infringement of the AE Mark.  Defendant should have reasonably foreseen that conduct infringing plaintiff's trademark would cause harm to plaintiff in Kansas, and would require it to defend itself in a Kansas forum.[56]  The purposeful availment/expressly aimed requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."[57]  Here, however,

---

[53]No. 08-2297-GLR 2009 WL 1505705 (D. Kan. May 28, 2009).

[54]*Id.* at *14.

[55]Doc. 10-7 at 5.

[56]*See Intercon, Inc. v. Bell Atl. Internet- Solutions*, 205 F.3d 1244, 1248 (10th Cir. 2000).

[57]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations and quotation marks omitted).

defendant's infringement of the AE Mark after it had not only been placed on notice by plaintiff's demand letter, but had also affirmatively stated it would no longer infringe plaintiff's trademark, is beyond merely "random, fortuitous, or attenuated." The Court finds that these facts are sufficient to establish a prima facie case that defendant intentionally acted in a manner expressly aimed at Kansas.

**b.      Nexus**

The Court also must determine whether there is a nexus between defendant's contacts with Kansas and plaintiff's cause of action.[58]  Although the Tenth Circuit has not identified the appropriate test to be applied, it generally applies one of two tests: (1) "but-for" causation; or (2) proximate cause.[59]

> Proximate cause is the most restrictive approach and requires courts to analyze "whether any of the defendant's contacts with the forum are relevant to the merits of plaintiff's claim."  "But-for" causation is less restrictive and supports the exercise of personal jurisdiction based on "any event in the causal chain leading to plaintiff's injury."[60]

The Tenth Circuit further explained: "Specific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."[61]

---

[58]*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010).

[59]*Id.* at 1161.

[60]*Id.* (internal citations omitted).

[61]*Dudnikov*, 514 F.3d at 1078.

Here, the nexus between defendant's conduct and plaintiff's cause of action is clear even under the restrictive proximate cause approach.  In its Complaint, plaintiff states it has invested considerable time, money, and effort into establishing goodwill for the AE Mark.  Plaintiff argues that defendant's use of the AE Mark on its website and YouTube page, which are "purposefully directed" at plaintiff, cause consumer confusion and damage plaintiff's reputation. While defendant argues that plaintiff's injuries do not arise out of its general contacts with the state of Kansas, it only attacks plaintiff's specific jurisdiction argument on the "purposeful direction" element, making no argument regarding the nexus.  Therefore, plaintiff has shown a nexus between defendant's conduct and plaintiff's cause of action.  The Court finds that plaintiff has made a *prima facie* showing of minimum contacts based on specific jurisdiction.

### C.    Reasonableness

Once a plaintiff has made a minimum contacts showing, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[62]  The considerations most often discussed are: (1) the burden on defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.[63]  If these factors are strong, they may serve to establish the reasonableness of jurisdiction even if plaintiff's showing of minimum contacts is weak.[64]

---

[62]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

[63]*Employers Mut. Cas. Co.*, 618 F.3d at 1161.

[64]*OMI Holdings, Inc. v. Royal Ins. Co*, 149 F.3d 1086, 1095 (10th Cir. 1998); *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005).

Plaintiff notes that Kansas has an interest in providing a forum in which its residents can seek redress for intentional harm caused by out-of-state actors.  Defendant does not respond to this point, arguing instead that plaintiff has failed to make a *prima facie* showing and therefore that defendant is not required to present a compelling case that jurisdiction is otherwise unreasonable.  But defendant does argue, in its minimum contacts discussion, that as a policy matter it would be unreasonable for jurisdiction to be premised on its receipt of a demand letter. While receipt of a demand letter from a resident-plaintiff, standing alone, may not be sufficient to form the minimum contacts required for specific jurisdiction, here, plaintiff's demand letter placed defendant on notice of its trademark infringement claim, defendant responded that it would discontinue its use of the mark, and then continued the alleged infringing conduct.[65] Under these facts, the burden on defendant is not unreasonable.  The Court finds that plaintiff has met its *prima facie* burden, and that the factors set forth above establish the reasonableness of jurisdiction in Kansas.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9) is **denied**.[66]

**IT IS SO ORDERED.**

Dated: August 10, 2011

 S/ Julie A. Robinson
 JULIE A. ROBINSON

---

[65] *Cf. PC Connection, Inc. v. Crabtree*, 754 F. Supp. 2d 317, 332 (D.N.H. 2010) (finding insufficient evidence of purposeful availment where defendant disagreed with plaintiff's opinion of trademark infringement set forth in the demand letter, voluntarily offered to add a disclaimer to the mark and did "nothing affirmative to exploit any similarity between his domain name and plaintiff's marks.").

[66] Plaintiff requests leave to conduct jurisdictional discovery in its response.  Given the Court's ruling on the motion to dismiss, the Court finds this request is moot.

UNITED STATES DISTRICT JUDGE